1

2

3   E-filed on:      03/20/09

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

**United States District Court**
For the Northern District of California

12   ANDREW SMITH COMPANY, a general          No. C-08-04802 RMW
     partnership,
13                                            ORDER GRANTING MOTIONS TO
                    Plaintiff,                DISMISS
14
          v.                                  **[Re Docket Nos. 12, 13]**
15
     PAUL'S PAK, INC.; PREMIUM FRESH
16   FARMS, LLC; PDP & ASSOCIATES, LLC;
     AG HARVESTING & TECHNOLOGIES,
17   LLC; ESV INVESTMENTS, LLC;
     SALVADOR PAUL TARANTINO; PAUL S.
18   TARANTINO; JOHN L. SIMMONS; EMMIT
     L. PFOST; JACK PARSON; STEVEN A.
19   CINELLI; JOHN D. TAMAGNI; ROBERT
     ELLIOTT; JAMES S. TAMAGNI; RICHARD
20   TAMAGNI; STEVE CHURCH; THOMAS
     CHURCH; DAVID GILL; CHURCH
21   BROTHERS, LLC; and TRUE LEAF FARMS,
     LLC,
22
                    Defendants.
23
24         Plaintiff Andrew Smith Company ("Andrew Smith") has sued a network of defendants

25   because Andrew Smith has not been paid for over three million dollars worth of lettuce.  A subset of

26   defendants – Steve Church, Thomas Church, David Gill, Church Brothers, LLC, and True Leaf

27   Farms, LLC (collectively, "Church Defendants") – move to dismiss with prejudice the claims

28   alleged against them.  Andrew Smith opposes the motion.  The court has reviewed the papers and

     considered the arguments of counsel.  For the following reasons, the court grants the motion to

1   dismiss.  Andrew Smith is granted 30 days leave to amend its complaint, and may amend any

2   portion of its complaint.

3                                          **I.   BACKGROUND**

4       **A.      The Commercial Relationships Between the Parties**

5           Andrew Smith grows produce, particularly iceberg and romaine lettuce.  Docket No. 4 ("Am.

6   Compl.") ¶ 1; Exs. 1-5.  It signed a romaine lettuce supply agreement with Paul's Pak, Inc. on

7   December 1, 2005.  *Id.* ¶ 27; Ex. 1.  Andrew Smith and Paul's Pak entered into further contracts for

8   romaine and iceberg lettuce in November 2006, November 2007, and June 2008.  *Id.*, Exs. 2-4.  It

9   appears that Andrew Smith was Paul's Pak's primary supplier of lettuce.  *Id.* ¶ 35.[1]

10          Paul's Pak acted as the primary supplier of lettuce to Premium Fresh Farms, LLC, which

11  sells pre-made salads.  *See id.* ¶ 36.  Premium Fresh appears to be jointly owned by PDP &

12  Associates, LLC and AG Harvesting & Technologies, LLC.  *Id.* ¶¶ 4-5.  In turn, AG Harvesting

13  appears to be owned by CV Investments, LLC and ESV Investments, LLC.  *Id.* ¶¶ 6-7.  The non-

14  moving individual defendants are all officers, directors or shareholders of these entities.  *See id.* ¶¶

15  8-17.

16          In April 2007, Premium Fresh leased from True Leaf Farms, LLC a facility for processing

17  the lettuce and contracted with True Leaf for labor to process and package Premium Fresh's salads.

18  *Id.* ¶ 27.  In November 2007, Premium Fresh entered into a separate agreement with Church

19  Brothers, LLC to obtain Church Brothers' aid in marketing and selling Premium Fresh's salads.  *Id.*[2]

20  Andrew Smith alleges that both Church Brothers and True Leaf are owned and controlled by three

21  individuals: Steve Church, Thomas Church, and David Gill.  *Id.* ¶¶ 20-22, 29.  Thus, in producing its

22  packaged salads, Premium Fresh incurred costs in buying the lettuce from Paul's Pak, using True

---

[1]     Andrew Smith also alleges that it sold lettuce to AG Harvesting and directly to Premium
Fresh.  *See* Compl. ¶ 27; Ex. 5 (contract with AG Harvesting).  Andrew Smith's second and third
claims are for breach of contract against these entities.  However, the bulk of Andrew Smith's
damages ($3,055,485.60 of $3,269,825.28, or about 93%) flow from breaches by Paul's Pak, and
thus the court focuses primarily on this relationship.  The sole written agreement between Andrew
Smith and AG Harvesting suggests the lettuce went to the same purpose in that though Andrew
Smith sold the lettuce to AG Harvesting, Andrew Smith shipped it directly to Premium Fresh.  *See
id.*, Ex. 5 at 2.

[2]     Andrew Smith also alleges that Paul's Pak entered into a direct agreement to sell lettuce to
Church Brothers.  *Id.* ¶ 29; Ex. 7.  The relevance of this additional supply agreement is not clear.

Leaf's facilities and work force, and retaining Church Brothers for distribution and marketing. Among its many terms, the contract between Premium Fresh and Church Brothers required Church Brothers to remit to Premium Fresh the revenue from sales made by Church Brothers, minus Church Brothers' commission and certain shipping and marketing costs. *See id.* ¶ 30; Ex. 8 at § 7.5.

**B.     The February Renegotiations**

By February 2008, Church Brothers sought to renegotiate the terms of its agreement with Premium Fresh. Am. Compl. ¶ 31. Specifically, Church Brothers sought to amend the agreement to allow Church Brothers to retain sales proceeds and not to remit those proceeds to Premium Fresh if the agreement were terminated. *Id.* ¶ 31, Ex. 9. Only after Premium Fresh's debts to other vendors (specifically True Leaf and Church Brothers) had been paid would Church remit the balance of the sales to Premium Fresh to pay to Paul's Pak. *Id.* To accomplish this end, Paul's Pak had to agree to waive its rights under PACA, the Perishable Agricultural Commodities Act. *Id.* Premium Fresh and Paul's Pak appear to have agreed to the deal reluctantly. *Id.* ¶¶ 32-34. Among other concerns, Sal Tarantino (a person with ties to Paul's Pak and Premium Fresh) expressed to Church Brothers that Andrew Smith would not be pleased and might cease to supply Paul's Pak with lettuce if it knew of the amendment. *Id.* ¶ 35. Sal Tarantino then signed the amendment on behalf of both Paul's Pak and Premium Fresh (though he may not have had authority to sign for the latter) and agreed with Church Brothers to conceal the changes from Andrew Smith. *Id.* ¶¶ 34, 35.

**C.     Premium Fresh Shuts Down**

Premium Fresh "ceased doing business on October 20, 2008." *Id.* ¶ 37.[3] When Premium Fresh shut down, Church Brothers held over a million dollars in accounts receivable arising from sales of Premium Fresh salads. *Id.* ¶ 36. Over the course of the year that Premium Fresh did business with Church Brothers, Church Brothers paid itself and True Leaf over ten million dollars while Premium Fresh failed to pay Paul's Pak, and Paul's Pak failed to pay Andrew Smith, in excess of one million dollars for lettuce. *Id.* ¶ 37.

---

[3]     The parties refer to Premium Fresh as "ceasing to do business." There is no indication that Premium Fresh has filed for bankruptcy. The California Secretary of State lists Premium Fresh's current status as "cancelled." Paul's Pak's status as a corporation is currently listed as "dissolved." *But see* Docket No. 20 (Feb. 6, 2009) (answer and counterclaim filed by Paul's Pak).

United States District Court
For the Northern District of California

1   Taken as a whole, the gravamen of Andrew Smith's complaint against the Church defendants

2   appears to be that the Church defendants directed the proceeds from the sale of Premium Fresh salad

3   to prioritize payment to themselves over payments to Paul's Pak and Andrew Smith. The motive for

4   such may have been that PACA imposes a statutory trust on perishable commodities and proceeds

5   from their sale, giving a prioritized right to recovery to the farmer. Thus, as Premium Fresh's

6   profitability crumbled, it appears that the Church defendants strove to ensure that their claims on

7   Premium Fresh were not subordinated to the higher priority claims of Paul's Pak and Andrew Smith.

8   ## II.  ANALYSIS

9   The Church Defendants move to dismiss all of the claims alleged against them. The court

10  addresses each in turn.

11  ### A.    Claim 4 – Disgorgement of PACA Trust Assets

12  Andrew Smith's fourth claim seeks the disgorgement of the value of its produce that gave

13  rise to a PACA trust when Andrew Smith sold the produce to Paul's Pak, Premium Fresh and AG

14  Harvesting. Am. Compl. ¶¶ 64, 65. Andrew Smith alleges that all of the named defendants,

15  including the Church Defendants, are "statutory trustees" pursuant to PACA. *Id.* ¶ 66. The Church

16  Defendants find fault with many aspects of Andrew Smith's claim, and digesting their arguments

17  requires some background in the creation of PACA's trusts and what beneficiaries must do to prevail

18  upon the trust.

19  In enacting PACA, Congress sought to remedy problems in the perishable agricultural

20  commodities business. *See* 7 U.S.C. § 499e(c)(1); *see also Sunkist Growers, Inc. v. Fisher*, 104 F.3d

21  280, 282 (9th Cir. 1997) (providing statutory overview). Congress determined that it is against

22  public policy to allow commission merchants, dealers, or brokers to acquire produce without paying

23  for it and then to enter "financing arrangements" that encumber or give to others a security interest

24  in the produce or accounts receivable from the produce. *Id.* To remedy this harm, Congress

25  required such commission merchants, dealers, or brokers to hold in trust for the benefit of unpaid

26  "suppliers or sellers of such commodities or agents involved in the transaction, until full payment of

27  the sums owing in connection with such transactions has been received by such unpaid suppliers,

28  sellers, or agents." 7 U.S.C. § 499e(c)(2). The subject matter of the trust includes the produce, as

well as "all inventories of food or other products derived from [the produce], and any receivables or proceeds from the sale of such [produce]." *Id.* The unpaid supplier, seller, or agent can lose the benefits of this statutory trust, however, if it does not comply with the statute's notice provisions. 7 U.S.C. § 499e(c)(3)-(4). The notice provisions generally allow such notice to be included with the supplier, seller, or agent's "ordinary and usual billing or invoice statements." 7 U.S.C. § 499e(c)(4).

### 1.      The Church Defendants and Their Connection to Andrew Smith

To begin, the Church Defendants argue that they cannot be liable to Andrew Smith under PACA because they lacked privity with Andrew Smith. Andrew Smith suggests two distinct theories of how the Church Defendants are liable, each with its own complexities.

First, Andrew Smith argues that Church Brothers is a "broker" within the meaning of section 499e(c)(2). The paragraph Andrew Smith cites to support this allegation does not allege that Church Brothers is a "broker;" rather, it alleges that all of the Defendants are liable as statutory trustees because they are "owners, officers, directors, members and/or shareholders of Paul's Pak, Premium Fresh, AG Harvesting, Church Brothers, and True Leaf[.]" Am. Compl. ¶ 66. Nevertheless, the facts alleged in the complaint regarding Church Brothers' role in marketing Premium Fresh's salads could support the inference that Church Brothers was a "broker," i.e., "any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce *for or on behalf of the vendor or the purchaser*[.]" 7 § 499a(7) (emphasis added). But a broker for whom? As the emphasized portion of section 499a(7) shows, a person is a "broker" under PACA based on his or her relationship with the person for whom he or she negotiates sales or purchases of produce. Thus, the allegations in the complaint support the inference that Church Brothers was Premium Fresh's broker, and possibly also Paul's Pak's broker, and both Premium Fresh and Paul's Pak were Andrew Smith's brokers, but there is no allegation that Church Brothers had a direct relationship with Andrew Smith.

Church Brothers argues that this lack of privity with Andrew Smith is fatal to Andrew Smith's claim that Church Brothers is a "broker" with respect to Andrew Smith's produce. Indeed, after examining the case law and PACA's legislative history, the Eastern District of California held that an unpaid PACA beneficiary could recover only against those with whom it was in privity. *In*

1   *re Enoch Packing Co., Inc.*, 2007 WL 1589537, *10-*11 (E.D. Cal. Jun. 1, 2007).  As discussed

2   above, this result flows from the definition of the term "broker" employed by PACA.  Church

3   Brothers could not have been Andrew Smith's "broker" absent a contractual relationship with

4   Andrew Smith.  This result also accords with PACA's requirement that a beneficiary give notice of

5   its intent to preserve a trust.  *See* 7 U.S.C. § 499e(c)(3)-(4).  It is relatively straightforward for an

6   unpaid seller or supplier to give notice to the broker with which it has a contractual relationship.

7   PACA's notice provision would be much more difficult to satisfy were the definition of "broker"

8   stretched beyond the direct chain of privity.

9       Andrew Smith does not clearly argue otherwise.  When Church Brothers argues that the

10  PACA claim against it should be dismissed for Andrew Smith's failure to give it notice of Andrew

11  Smith's intent to preserve the trust, Andrew Smith relies on the invoices it sent to Paul's Pak,

12  Premium Fresh, and AG Harvesting.  *See* Am. Compl. ¶ 65, Ex. 6 (summary of Andrew Smith's

13  invoices).  Andrew Smith's reliance on these invoices suggest that it never provided notice directly

14  to Church Brothers, nor should it have given the lack of a relationship between the two entities.

15      This argument, however, leads to Andrew Smith's second theory of liability, which the court

16  understands to allege generally that Paul's Pak and Premium Fresh are directly liable to Andrew

17  Smith for violations of PACA's trust provisions.  In turn, the Church Defendants (as well as nearly

18  every other named defendant) "were during all times relevant responsible for the daily management

19  and control of Defendant Paul's Pak, statutory trustees under PACA, and in positions to control the

20  PACA trust assets that are subject of this lawsuit."  Am. Compl. ¶ 25; *see also* Am. Compl. ¶ 66.

21  Andrew Smith similarly alleges that the Church Defendants were responsible for the "daily

22  management and control" of Premium Fresh.  *Id.* ¶ 26.[4]  Based on this level of control, Andrew

23  Smith contends that the Church Defendants are liable for Paul's Pak and Premium Fresh's PACA

24  violations.

25      "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to

26  control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held

27  personally liable under PACA."  *Sunkist Growers*, 104 F.3d at 283.  The Ninth Circuit did not,

28

---

[4]     Andrew Smith does not allege that the Church Defendants controlled AG Harvesting.

however, explain the limits of such individual liability for a corporation's breach of a duty owed to

the beneficiary of a PACA trust.  *See id.*; Batholomew M. Botta, *Personal Liability for Corporate*

*Debts: The Reach of the Perishable Agricultural Commodities Act Continues to Expand*, 2 Drake J.

Agric. L. 339 (1997) ("Both the Ninth Circuit Court of Appeals in *Sunkist* and the Pennsylvania

Eastern District Court in *K.B. Fruit* have left it for future courts to decide just how broadly and how

far liability will extend under the PACA.").  Clear cases for extending such liability to individuals

involve situations where a single person is the sole officer and director of the corporation that

breached its duty under PACA.  *E.g.*, *Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc.*, 548 F.

Supp. 2d 840, 849 (E.D. Cal. 2008); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 706 (2d

Cir. 2007).  But in closer cases, the Third Circuit has suggested that individual liability stems not

from the text of the statute, but from the common law of trusts.  *Weis-Buy Services, Inc. v. Paglia*,

411 F.3d 415, 421 (3d Cir. 2005); *see also Boulder Fruit Exp. & Heger Organic Farm Sales v.*

*Transportation Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir. 2001) ("We apply general trust

principles to questions involving the PACA trust, unless those principles directly conflict with

PACA.").  Thus, the answer to the scope of individual liability for corporate breaches of fiduciary

duty under PACA would not appear to lie within the United States Code.[5]  But to be clear, this

liability arises from the common law of trusts and is distinct from piercing the corporate veil.

*Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y.1993).  In this

---

[5]       That aside, PACA may offer a more satisfactory limit to the scope of liability.  It contains a definition of persons it deems "reasonably connected" to a broker or dealer.  7 U.S.C. § 499a(9).  "Reasonably connected" means "affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association."  *Id.*  PACA employs this definition of "reasonably connected" to instruct the Secretary of the Department of Agriculture as to who the Secretary shall not license to work as a commission merchant, broker, or dealer.  7 U.S.C. §§ 499c; 499d(b).  If the Secretary finds that one who is "reasonably connected" to an applicant has engaged in various acts, the Secretary must deny the applicant a license to work as a commission merchant, broker or dealer.  *Id.*  A definition suitable for imposing "guilt by association" on an applicant for a PACA license strikes the court as a potentially sensible definition for also marking the scope of an individual's liability for the breaches of fiduciary duty committed by a commission merchant, broker, or dealer.  Furthermore,  the definition of "reasonably connected" employed by the statute creates only a rebuttable presumption.  Any individual alleged to be "reasonably connected" may show by the preponderance of the evidence that "the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners."  7 U.S.C. § 499(a)(9).

**United States District Court**
For the Northern District of California

1  context, liability extends past the corporate fiduciary and to the individual because "[a]n individual

2  who is in the position to control the [PACA] trust assets and who does not preserve them for the

3  beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." *Id.*

4       The Church Defendants argue that Andrew Smith has not alleged that they were "individual

5  shareholders, officers, or directors" who could control the PACA trust assets at Paul's Pak or

6  Premium Fresh. Andrew Smith's allegations on this point are scanty, tending to conclusory. *See*

7  Am. Compl. ¶¶ 25, 26. While Andrew Smith generally alleges that *every* defendant was in a

8  position to control Paul's Pak and Premium Fresh, this allegation appears contradicted by the

9  complaint's other, more detailed allegations about who controlled Paul's Pak and Premium Fresh.

10 *See id.* ¶¶ 2-17 (listing known owners of Paul's Pak and members of Premium Fresh and not listing

11 the Church Defendants).[6]

12            **2.     Preservation of Andrew Smith's Rights**

13      As discussed above, PACA requires the unpaid seller of produce to provide certain notice to

14 preserve its right to benefit from the trust created by the law. 7 U.S.C. § 499e(c)(3)-(4); *In re San*

15 *Joaquin Food Service, Inc.*, 958 F.2d 938, 939 (9th Cir. 1992). Repeating its arguments based on

16 *Twombly*, the Church Defendants argue that Andrew Smith has not alleged sufficient facts that it

17 provided notice to Paul's Pak and Premium Fresh[7] and that Andrew Smith's notices contained the

18 proper terms.

19      In opposition, Andrew Smith relies on a single allegation: "Pursuant to the statutory trust

20 provisions of PACA [7 U.S.C. §499e(c)(1)-(40) [sic]], Plaintiff is informed and believes and thereon

21 alleges that *Plaintiff has performed and fulfilled all duties required to preserve their trust benefits* in

22 _____

23 [6]      Andrew Smith also makes allegations about the changes to the Premium Fresh marketing
24 agreement that led to the alleged enrichment of True Leaf and Church Brothers at the expense of
   Paul's Pak and Andrew Smith. These allegations suggest that the Church Defendants may have
   exerted substantial influence over Premium Fresh and Paul's Pak. Despite *Sunkist Growers*'s
25 apparent limit to shareholders, officers, and directors, the court does not decide the issue of whether
   the allegations about the forceful renegotiation demonstrate a level of control that extends a duty to
26 maintain the PACA trust to the Church Defendants even if the Church Defendants turn out not to be
   officers, directors, or shareholders of Paul's Pak or Premium Fresh.

27 [7]      The Church Defendants argue that nothing in the complaint indicates that Andrew Smith
28 alleges that it provided notice directly to the Church Defendants. The court agrees, and it does not
   read Andrew Smith's complaint to suggest otherwise.

United States District Court
For the Northern District of California

the cumulative amount of $3,269,825.28 as separately set forth above, for the perishable agricultural commodities sold to Defendants Paul's Pak, Premium Fresh and AG Harvesting, all of which remains past due and unpaid." Am. Compl. ¶ 65 (emphasis added).  This is not much.  And the Church Defendants suggest a reason for concern.  They note that in paragraph 28, Andrew Smith alleges that the "attached invoices" to Paul's Pak include written provisions outlining Andrew Smith's entitlement to attorney's fees and interest on unpaid sums, but that Andrew Smith does not allege that the invoices included the required notice under PACA.  The Church Defendants also note that Andrew Smith's amended complaint does not, in fact, include the "attached" invoices.  It includes only a summary of the amounts allegedly owed to Andrew Smith by Paul's Pak, Premium Fresh, and AG Harvesting.  *See* Am. Compl., Ex. 6.  The Church Defendants insinuate that Andrew Smith's invoices may not have complied with PACA, and thus would prevent Andrew Smith from availing itself of the benefits of the statutory trust, and that if this is so, the Church Defendants should be allowed to end this case without incurring the expense of discovery.

The court is persuaded that Andrew Smith's claim should be dismissed and repleaded to state facts showing Andrew Smith's compliance with PACA's requirements for preserving the trust.  As alleged, Andrew Smith has averred only the legal conclusion that it has complied with PACA's requirements.  But Andrew Smith, as the sender of its invoices, will not be burdened by including a representative sample of those invoices, alleging that it possessed a PACA license, and pleading any other facts necessary to show that it complied with PACA's trust preservation requirements.  Accordingly, the court grants the Church Defendant's motion to dismiss the PACA claim for failure to allege facts showing Andrew Smith's preservation of its rights under the various statutory trusts that arose from its produce sales.

### 3.    Alleged Dissipation

The Church Defendants' final argument with respect to the PACA claim is that Andrew Smith does not adequately allege that the Church Defendants dissipated the assets underlying the trusts created for Andrew Smith's benefit.  It is a violation of PACA for a commission merchant, broker, or dealer acting as a trustee to make any act or omission inconsistent with its fiduciary duty, and this includes any "dissipation" of trust assets.  *Boulder Fruit*, 251 F.3d at 1271 (citing 7 C.F.R. §

46.46(d)(1)).  "Dissipation" means "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."  *Id.* (citing 7 C.F.R. § 46.46(a)(2)).

Andrew Smith clearly alleged such conduct with respect to the February renegotiation that resulted in Church Brothers and True Leaf being repaid before Paul's Pak and Andrew Smith.  This diversion of trust assets to pay other creditors falls squarely within the definition of "dissipation."  The Church Defendants suggest that this allegation is only an allegation that Premium Fresh dissipated trust assets, which is true, but if Andrew Smith successfully amends its complaint to allege how the Church Defendants controlled Premium Fresh, these allegations would suffice to show dissipation.

### 4.  Derivative State Law Claims

The Church Defendants also move to dismiss Andrew Smith's seventh claim for unjust enrichment, eighth claim for conversion, and ninth claim for breach of fiduciary duty.  The Church Defendants' arguments in favor of dismissal all flow from their argument that they cannot be held liable under Andrew Smith's PACA trust claim because of their lack of privity with Andrew Smith.  Likewise, Andrew Smith's arguments all flow from its contention that it has alleged that the Church Defendants owed it a fiduciary duty.  As discussed above, the court rejected Andrew Smith's argument that it has adequately alleged how the Church Defendants controlled Premium Fresh and Paul's Pak.  Because the parties' arguments with respect to these claims rise and fall together, the motion to dismiss is granted.

### B.  Claim 5 – Failure to Account Under PACA

Andrew Smith's fifth claim against all defendants alleges a violation of PACA arising from the defendants' failure to account and pay promptly for the lettuce delivered by Andrew Smith to Paul's Pak, Premium Fresh, and AG Harvesting.  *See* 7 U.S.C. § 499b(4).  Specifically, the statute forbids commission merchants, dealers, and brokers from failing or refusing "truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person *with whom such transaction is had*."  *Id.* (emphasis added).  The Church Defendants point to

United States District Court
For the Northern District of California

1   the emphasized language of the statute to argue that a claim for failure to account may only be

2   asserted against a person who was in privity with the unpaid produce seller.

3          Andrew Smith's opposition is difficult to follow.  Andrew Smith appears to concede again

4   that it was not in privity with the Church Defendants directly, but that the Church Defendants remain

5   liable for their roles in controlling Premium Fresh and Paul's Pak.  The Church Defendants have

6   already established that this theory of liability has not been adequately alleged, and the court

7   therefore grants the motion to dismiss this claim.

8          **C.      Claims 10 and 11 – Misrepresentation and Negligent Misrepresentation**

9          Andrew Smith's tenth and eleventh claims allege misrepresentation and negligent

10  misrepresentation against all defendants arising from the February renegotiations.  The Church

11  Defendants move to dismiss, however, on the basis that the amended complaint does not allege a

12  misrepresentation, let alone a misrepresentation made to Andrew Smith.  *See* Am. Compl. ¶¶ 31-35,

13  93-98.

14         In opposition, Andrew Smith points to its allegations in paragraphs 34 and 35.  There,

15  Andrew Smith alleges that the Church Defendants "did not plan to disclose to Andrew Smith that

16  the February Marketing Agreement required a purported waiver by Andrew Smith of its PACA

17  rights." Am. Compl. ¶ 35.  This is not a misrepresentation, nor is it a negligent misrepresentation.

18  Andrew Smith's theory instead appears to be one of concealment or omission in light of a duty to

19  disclose.  This theory is not alleged, however, and claims grounded in fraud must be alleged with

20  particularity. Fed. R. Civ. P. 9(b).  Accordingly, the court grants the motion to dismiss claims 11

21  and 12.

22         **D.      Claim 12 – Breach of Third Party Beneficiary Contract**

23         Andrew Smith's twelfth claim is for breach of a third party beneficiary contract.  The alleged

24  contracts are the agreements between True Leaf and Premium Fresh and Church Brothers and

25  Premium Fresh.  Andrew Smith's complaint appears to be that these defendants have breached their

26  contracts with Premium Fresh by not remitting the outstanding million dollars in accounts receivable

27  to Premium Fresh, which would in turn remit those monies to Paul's Pak and Andrew Smith.  Thus,

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Andrew Smith claims that it is an intended beneficiary of Premium Fresh's contracts with these

2  defendants.

3        California law permits a third party to enforce a contract "made expressly for the benefit of a

4  third person[.]" Cal. Civ. Code § 1559; *Brinton v. Bankers Pension Services, Inc.*, 76 Cal. App. 4th

5  550, 558-59 (1999). The third-party beneficiary inquiry turns on the intent of the contracting

6  parties, and that "intent which must appear in the terms of the agreement." *Brinton*, 76 Cal. App.

7  4th at 558. Even drawing all inferences in Andrew Smith's favor, Premium Fresh's contracts with

8  True Leaf and Church Brothers were not entered into to benefit Andrew Smith; they were entered

9  into to benefit Premium Fresh. These contracts had the incidental benefit of making Premium Fresh

10  money from the sale of its packaged salads, which Premium Fresh could then use to pay Andrew

11  Smith. But the court cannot discern where in the oral agreement with True Leaf or the written

12  agreement with Church Brothers that Premium Fresh expressed an intent to enter the contracts for

13  Andrew Smith's benefit. Accordingly, the court grants the motion to dismiss.

14        **E.     Leave to Amend**

15        In its moving papers, the Church Defendants argue that leave to amend should be denied.

16  The court disagrees and envisions ways in which Andrew Smith could streamline, clarify and

17  potentially remedy the deficiencies in its complaint. Accordingly, the court grants Andrew Smith

18  thirty days leave to amend its complaint.

19                              **III.  ORDER**

20        For the foregoing reasons, the court grants the motion to dismiss. Andrew Smith is granted

21  30 days leave to amend its complaint, and may amend any portion of its complaint.

22

23  DATED:      03/20/09

24                                          RONALD M. WHYTE
                                            United States District Judge

25

26

27

28

ORDER GRANTING MOTIONS TO DISMISS — No. C-08-04802 RMW
TSF                                      12

**United States District Court**
For the Northern District of California

1 | **Notice of this document has been electronically sent to:**

2

3 | **Counsel for Andrew Smith Company:**

4 | Jan Leslie Kahn                          jkahn@kschanford.com
Ann Marguerite Grottveit          agrottveit@kscsacramento.com

5 | **Counsel for the Church Defendants:**

6 | Edward William Smithers            ews@smitherslf.com
Mary Ann O'Hara                        mao@smitherslf.com

7 | **Counsel for Paul's Pak defendants:**

8 | Effie F. Anastassiou                    effieesq@salinasaglaw.com

9

10

11 | **Dated:** _____03/20/09_____          _____TSF_____

12 | **Chambers of Judge Whyte**