**E-FILED on** 11/17/2010

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW SMITH COMPANY, a general partnership,<br><br>Plaintiff,<br><br>v.<br><br>PAUL'S PAK, INC.; PREMIUM FRESH FARMS, LLC; PDP & ASSOCIATES, LLC; AG HARVESTING & TECHNOLOGIES, LLC; ESV INVESTMENTS, LLC; SALVADOR PAUL TARANTINO; PAUL S. TARANTINO; JOHN L. SIMMONS; EMMIT L. PFOST; JACK PARSON; STEVEN A. CINELLI; JOHN D. TAMAGNI; ROBERT ELLIOTT; JAMES S. TAMAGNI; RICHARD TAMAGNI; STEVE CHURCH; THOMAS CHURCH; DAVID GILL; CHURCH BROTHERS, LLC; and TRUE LEAF FARMS, LLC,<br><br>Defendants. | No. C-08-04802 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT ON ANDREW SMITH'S CLAIMS<br><br>[Re Docket Nos. 228, 231, 275, 277] |

Plaintiff Andrew Smith Company ("Andrew Smith") has sued a network of defendants – including Paul's Pak, Inc. ("Paul's Pak"), Premium Fresh Farms, LLC ("Premium Fresh"), Church Brothers, LLC ("Church Brothers"), Thomas Church, and Steve Church (collectively, "Church Defendants"), and True Leaf Farms, LLC ("True Leaf") and David Gill (collectively, "True Leaf Defendants") – because it has not been paid for over three million dollars worth of lettuce.  True

1  Leaf Defendants and Church Defendants each move for summary judgment on Andrew Smith's
2  claims.  In addition, True Leaf Defendants and Church Defendants move to strike various
3  declarations and exhibits submitted with Andrew Smith's opposition papers.  For the following
4  reasons, the court grants the motions in part and denies the motions in part.

**I.  MOTION TO STRIKE**

**A.     Grottveit Declaration & Kahn Declaration**

Andrew Smith's opposition papers cite to the declaration of Ann Grottveit ("Grottveit Declaration") and the declaration of Jan Kahn ("Kahn Declaration").  In both declarations, the declarant merely states that attached are excerpts of deposition testimony.  *See* Dkt. Nos. 255, 256. Attached to these declarations are hundreds of pages of deposition testimony.  *See* Dkt. Nos. 255, 256, 258, 259.  Because the opposition papers contain no page and line citations identifying the relevant portion of deposition testimony, the court and the moving parties are left to wade through hundreds of pages of deposition testimony in search of potentially relevant material.[1]  True Leaf Defendants and Church Defendants move to strike the Grottveit Declaration and the Kahn Declaration as well as the attached exhibits.

It is not the job of the district court to "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  "[W]hen a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence."  *Orr v. Bank of Am.*, 285 F.3d 764, 775 (9th Cir. 2002). The court therefore grants the motion to strike the original and the amended Grottveit Declarations and all attached exhibits.  Although the Kahn Declaration raises similar issues, because the attached excerpts of deposition testimony are not overly voluminous, the court denies the motion to strike the original and the amended Kahn Declarations and their attached exhibits.

**B.     Smith Declaration**

Andrew Smith also cites to the declaration of Richard Smith ("Smith Declaration") in opposing True Leaf Defendants' and Church Defendants' motions for summary judgment.  True Leaf

---

[1] The amended declarations submitted by Andrew Smith do not fix this problem.  *See* Dkt. Nos. 288, 289.

Defendants and Church Defendants move to strike paragraphs 11 and 12 of the Smith Declaration for lack of personal knowledge. Federal Rule of Civil Procedure 56(c)(4) requires declarations opposing a motion to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Richard Smith is the Vice President and Secretary of Andrew Smith Marketing Corporation, which is the Managing General Partner of Andrew Smith. Dkt. No. 253-1 ¶ 1. His declaration does not show that he has personal knowledge regarding the matters testified to in paragraphs 11 and 12 or that he would be competent to testify as to these matters. *See id.* ¶¶ 11, 12. The court thus grants the motion to strike paragraphs 11 and 12 of the Smith Declaration.  In addition, True Leaf Defendants and Church Defendants move to strike Exhibits 3 through 5 attached to the Smith Declaration as unauthenticated. Smith fails to set forth any facts concerning his personal knowledge of Exhibits 3 through 5. "[U]nauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F.3d at 773. The court therefore grants the motion to strike Exhibits 3, 4, and 5 as unauthenticated and thus inadmissible evidence.

## II. TRUE LEAF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The remaining causes of action asserted by Andrew Smith against True Leaf Defendants in its Second Amended Complaint are:

- Count Four – Perishable Agricultural Commodities Act ("PACA") claim for disgorgement of trust assets;
- Count Six – injunctive relief;
- Count Seven – unjust enrichment;
- Count Eight – conversion;
- Count Nine – fiduciary fraud and constructive trust;
- Count Ten – fraudulent concealment; and
- Count Eleven – fraudulent misrepresentation.

True Leaf Defendants seek summary adjudication in their favor on all of these counts.

### A. PACA Claims

Congress enacted the Perishable Agricultural Commodities Act ("PACA") to prevent unfair business practices and promote financial responsibility in the produce industry. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). In 1984, Congress amended PACA to further protect produce sellers from the growing risk of delayed payment or nonpayment due to business failures in the supply chain. *Id.*; *see also* 49 F.R. 45735, Trust Provision. Under PACA, commission merchants, dealers, and brokers hold produce and any receivables from the sale of produce in trust for the benefit of unpaid produce suppliers until full payment has been made to the supplier. 7 U.S.C. § 499e(c)(2).

The following facts are undisputed: Andrew Smith entered into agreements to sell lettuce to Paul's Pak, who in turn supplied lettuce to Premium Fresh. Premium Fresh entered into a processing agreement with True Leaf to process and package its pre-made salads as well as a marketing agreement with Church Brothers to market and sell its pre-made salads. Paul's Pak also entered into an agreement to supply Church Brothers directly with lettuce.

Because Andrew Smith lacks any direct relationship with True Leaf Defendants, Andrew Smith's PACA claims against True Leaf Defendants are based on the following two theories of liability: (1) True Leaf Defendants controlled the day to day operations of Premium Fresh and Paul's Pak; and (2) True Leaf Defendants received PACA assets in breach of a PACA trust and with notice of the breach. The court thus considers the viability of both theories of liability.

### 1. Control Over Premium Fresh and Paul's Pak

Andrew Smith has failed to provide sufficient evidence to raise a triable issue of material fact that True Leaf Defendants controlled either Premium Fresh or Paul's Pak. The fact that True Leaf entered into a processing agreement with Premium Fresh, whereby it provided Premium Fresh with facilities and labor for processing and packaging salads, is insufficient to establish that True Leaf Defendants controlled Premium Fresh's day to day operations.

Moreover, even if True Leaf Defendants did control Premium Fresh's daily operations, the court fails to comprehend how this would render True Leaf Defendants liable to Andrew Smith. Andrew Smith sold lettuce to Paul's Pak, and Paul's Pak supplied lettuce to Premium Fresh. As a result, a PACA trust was created between Andrew Smith and Paul's Pak, and a separate PACA trust

was created between Paul's Pak and Premium Fresh.  *See In re Enoch Packing Co.*, 2007 WL 1589537, at *10 (E.D. Cal. June 1, 2007) ("PACA only creates a trust between parties to a single transaction.").  Because there is no contractual relationship between Andrew Smith and Premium Fresh, there is no PACA trust between Andrew Smith and Premium Fresh.  *See id.*  Thus, if Premium Fresh breached its PACA duties, it breached them as a trustee of the PACA trust between Paul's Pak and Premium Fresh.  Andrew Smith, who is not a beneficiary of that trust, lacks standing to recover for such a breach.  *See id.* (legislative history of PACA clarifying that if there is a PACA trust between A and B and a PACA trust between B and C, A cannot recover directly from C based on C's breach of trust).

### 2. Third Party Transferee Liability

In the alternative, Andrew Smith contends that True Leaf Defendants are liable under PACA as third party transferees who received PACA trust assets in breach of a PACA trust and with notice of that breach.  Under general trust principles, when a trustee acts in breach of trust to transfer trust assets to a third party who has notice of the breach of trust, the third party transferee can be forced to disgorge the trust assets he received.  *See* Restatement (Second) of Trusts §§ 288, 291.  General trust principles apply to a PACA trust unless those principles directly conflict with PACA.  *Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir. 2001).  Consequently, although third parties are not guarantors of a PACA trust, they may be liable under PACA if they were involved in the breach or dissipation of the trust.  *Id.* at 1272; *see also Sunkist*, 104 F.3d at 283 ("If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.").  In particular, PACA claims for disgorgement can be brought against third party transferees who received trust assets with notice of the breach of trust.  *See Nickey Gregory Co., LLC v. Agricap, LLC*, 597 F.3d 591, 596 (4th Cir. 2010); *see also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1069 (2d Cir. 1995).

Andrew Smith argues that Paul's Pak transferred trust assets to True Leaf Defendants in breach of the PACA trust between Andrew Smith and Paul's Pak, and that True Leaf Defendants had notice of this breach of trust.  According to Andrew Smith, Paul's Pak breached the PACA trust by

entering into an agreement whereby it waived its PACA rights for unpaid produce invoices ("Waiver Agreement"). *See* Dkt. No. 73 Ex. 12.

The court first determines whether this conduct constituted a breach of trust. A breach of trust is "a violation by the trustee of any duty which as trustee he owes to the beneficiary." Restatement (Second) of Trusts § 201. PACA trustees have a duty to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets is unlawful and in violation of [PACA]." 7 C.F.R. § 46.46(d)(1). Dissipation means "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). Paul's Pak's waiver of its PACA rights, by hindering its ability to recover money from Church Brothers, certainly could prejudice or impair the ability of Andrew Smith to recover money that it is owed based on the lettuce it supplied to Paul's Pak. Therefore, Paul's Pak breached the PACA trust by entering into the Waiver Agreement.

Although True Leaf Defendants were not signatories to the Waiver Agreement, it appears that True Leaf Defendants received trust assets pursuant to the Waiver Agreement. The Waiver Agreement provides in part:

> If the Premium Fresh and Church Brothers marketing deal terminates for any reason, Premium Fresh and Paul's Pak agree that all vendors except for Paul's Pak will be paid in full by Church Brothers from the Premium Fresh sales proceeds. Once all vendors (including True Leaf and Church Brothers) have been fully paid . . . from sales proceeds, any additional money remaining will be remitted to Premium Fresh who will than [sic] pay Paul's Pak.

Dkt. No. 73 Ex. 12. It is undisputed that, upon termination of the marketing agreement between Premium Fresh and Church Brothers, Church Brothers paid True Leaf and other vendors out of sales proceeds as provided under the Waiver Agreement. Dkt. No. 230 Ex. 12. These sales proceeds constitute trust assets. *See* 7 U.S.C. § 499e(c)(2) (providing that the trustee is to hold "all inventories of food or other products derived from perishable agricultural commodities, and any

United States District Court
For the Northern District of California

receivables or proceeds from the sale of such commodities or products" in trust for unpaid suppliers).

The court now turns to the question of whether True Leaf Defendants had notice of the breach of trust. A person has notice of a breach of trust if he knows or should know of the breach of trust. Restatement (Second) of Trusts § 297(a). A person should know of a breach of trust:

> when he knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee is a trustee and whether he is committing a breach of trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know that the trustee is committing a breach of trust.

*Id.* comment a. "In the PACA context, a duty of inquiry arises when a third-party transferee has knowledge that a produce purchaser/trustee is not paying produce suppliers or is in financial difficulty." *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1383 (3rd Cir. 1994). Andrew Smith has provided some evidence suggesting that True Leaf Defendants knew that Premium Fresh owed money to Paul's Pak, who owed money to Andrew Smith. *See* Dkt. No. 253 ¶ 5, Ex. 1. In light of the duty of inquiry that arises out of such knowledge, a factual question exists as to whether True Leaf Defendants had constructive knowledge of the breach of trust. Moreover, True Leaf Defendants have the burden of establishing that they lacked notice and were bona fide purchasers of the trust assets. *See Consumers Produce*, 16 F.3d at 1383. Because they have failed to put forth any evidence showing lack of notice, the court finds that True Leaf Defendants may be found liable as third party transferees with notice and therefore denies their motion for summary adjudication in their favor on Counts Four and Six.

### B. **Counts Seven, Eight, and Nine**

True Leaf Defendants argue that summary adjudication should be granted in their favor on Counts Seven, Eight, and Nine because each of these causes of action are premised upon True Leaf Defendants owing Andrew Smith a fiduciary duty under PACA. However, Andrew Smith could prevail on Counts Seven and Eight, for unjust enrichment and conversion, respectively, based on a finding of third party transferee liability. Count Nine, for fiduciary fraud and constructive trust, does require finding that True Leaf Defendants owe Andrew Smith a fiduciary duty. As discussed above, there is no PACA trust between Andrew Smith and True Leaf Defendants, and accordingly,

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR  SUMMARY JUDGMENT ON ANDREW SMITH'S CLAIMS—No. C-08-04802 RMW
CCL                                                              7

True Leaf Defendants are not trustees with fiduciary duties based on such a PACA trust. Although there is a PACA trust between Andrew Smith and Paul's Pak, Andrew Smith has failed to establish that True Leaf Defendants control the daily operations of Paul's Pak. Therefore, Andrew Smith has failed to set forth any basis for finding that True Leaf Defendants owe it a fiduciary duty. The court thus grants True Leaf Defendants' motion for summary adjudication in their favor on Count Nine and deny their motion for summary adjudication in their favor on Counts Seven and Eight.

### C. Count Ten – Fraudulent Concealment

Andrew Smith's fraudulent concealment claim is based on its allegation that True Leaf Defendants intentionally concealed the existence of the Waiver Agreement from Andrew Smith. The elements of a cause of action for fraudulent concealment are: (1) misrepresentation (concealment), (2) knowledge of falsity (scienter), (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *See Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 68 (1957). True Leaf Defendants argue that summary adjudication should be entered in their favor because Andrew Smith has failed to provide evidence of proximately caused damages resulting from their nondisclosure of the Waiver Agreement.[2]

True Leaf Defendants point out that Andrew Smith was already aware of the significant financial risk it was taking in supplying Paul's Pak with lettuce since it had given notice on multiple occasions to Paul's Pak that it was terminating its supply contract due to Paul's Pak's failure to make timely payments. *See* Dkt. No. 233 ¶ 14, Ex. 12. While this may suggest that Andrew Smith might have continued supplying Paul's Pak with lettuce even if it had known about the Waiver Agreement, a reasonable fact-finder could find otherwise. The owner of Andrew Smith testified that Andrew Smith would have stopped supplying lettuce to Paul's Pak if it had been aware of the existence of the Waiver Agreement. *See* Dkt. No. 255 Ex. 3, 170:10-22. The court finds that there is a genuine issue of material fact as to whether Andrew Smith would have continued to supply Paul's Pak with lettuce had it known about the Waiver Agreement.

---

[2] True Leaf Defendants also argue in their reply papers that Andrew Smith failed to establish reasonable reliance. Because this issue was raised for the first time in the reply, the court does not consider it.

True Leaf Defendants also contend that they had no duty to disclose the existence of the Waiver Agreement to Andrew Smith.

> Mere nondisclosure of facts is ordinarily not enough to constitute fraud, but it may be actionable under certain circumstances. One situation is where the defendant, who has no duty to speak, nevertheless does so. In such a case he is bound to speak truthfully and to speak the whole truth.

*Zinn*, 148 Cal. App. 2d at 68. Andrew Smith has offered evidence that True Leaf Defendants spoke to Andrew Smith, requesting financial assistance and seeking a restructuring of existing PACA debt. *See* Dkt. No. 253 Ex. 1 ¶¶ 14-15. A reasonable fact-finder could find that these communications with Andrew Smith were likely to mislead Andrew Smith, absent disclosure of the Waiver Agreement. Accordingly, True Leaf Defendants would have had a duty to disclose the Waiver Agreement. *See* Cal. Civ. Code § 1710 (deceit includes "[t]he suppression of a fact, by one . . . who gives information of other facts which are likely to mislead for want of communication of that fact"). The court thus denies True Leaf Defendants' motion for summary adjudication in its favor on Count Ten.

### D.     Count Eleven – Fraudulent Misrepresentation

Andrew Smith's fraudulent misrepresentation claim is based on its allegation that at some time between February 2008 and October 2008, True Leaf Defendants "fraudulently misrepresented to Plaintiff their intention of satisfying all of Plaintiff's PACA claims in an attempt to induce Plaintiff to continue supplying Paul's Pak and Premium Fresh with produce." Second Am. Compl. ¶ 126. True Leaf Defendants contend that summary adjudication should be granted in their favor because Andrew Smith cannot even identify with specificity any affirmative misrepresentation allegedly made by True Leaf Defendants. In response, Andrew Smith points to paragraphs in a declaration stating that Andrew Smith was never informed of the existence of the Waiver Agreement. *See* Dkt. No. 253-1 ¶¶ 14-15. These statements fail to point to any affirmative misrepresentation made by True Leaf Defendants, much less identify the fraud with specificity. The court therefore grants True Leaf Defendants' motion for summary adjudication in their favor on Count Eleven.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR  SUMMARY JUDGMENT ON ANDREW SMITH'S CLAIMS—No. C-08-04802 RMW
CCL                                                              9

## III.  CHURCH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The remaining causes of action asserted by Andrew Smith against Church Defendants in its Second Amended Complaint are:

- Count Four – PACA claim for disgorgement of trust assets;
- Count Six – injunctive relief;
- Count Seven – unjust enrichment;
- Count Eight – conversion;
- Count Nine – fiduciary fraud and constructive trust;
- Count Ten – fraudulent concealment; and
- Count Eleven – fraudulent misrepresentation.

Church Defendants seek summary adjudication in their favor on all of these counts.

### A.   PACA Claims

Because Andrew Smith lacks any direct relationship with Church Defendants, Andrew Smith's PACA claims against Church Defendants are based on the following two theories of liability: (1) Church Defendants controlled the day to day operations of Premium Fresh and Paul's Pak; and (2) Church Defendants received PACA assets in breach of a PACA trust and with notice of the breach.  The court thus considers the viability of both theories of liability.

#### 1.   Control Over Premium Fresh and Paul's Pak

Andrew Smith has failed to provide sufficient evidence to raise a material issue of fact that Church Defendants exercised control over the daily operations of either Premium Fresh or Paul's Pak.  It is undisputed that Church Brothers entered into a marketing agreement with Premium Fresh, and that Church Brothers entered into the Waiver Agreement with Paul's Pak.  In addition, Andrew Smith sets forth the following facts[3]: (1) Emmit Pfost, an officer and managing member of Premium Fresh from 2007 to 2008, began working as an independent contractor for Church Brothers in May 2008; and (2) Church Defendants asked Andrew Smith to provide financial assistance and to

---

[3] Although Andrew Smith makes additional factual assertions in its opposition, they are not supported by evidence in the record.

continue to supply lettuce to Premium Fresh to keep it operating because Tom Church had personally guaranteed a continuous supply of lettuce for a contract that Church Brothers entered into under the marketing agreement between Church Brothers and Premium Fresh. *See* Dkt. No. 226 ¶ 10; Dkt. No. 253-1 ¶ 14; Dkt. No. 253-2 ¶ 6. These facts are insufficient to establish that Church Defendants controlled the day to day operations of either Premium Fresh or Paul's Pak.

Moreover, even if Church Defendants did control Premium Fresh's daily operations, the court fails to comprehend how this would render Church Defendants liable to Andrew Smith. Andrew Smith sold lettuce to Paul's Pak, and Paul's Pak supplied lettuce to Premium Fresh. As discussed above, no PACA trust exists between Andrew Smith and Premium Fresh. *See In re Enoch Packing*, 2007 WL 1589537, at *10. Thus, if Premium Fresh breached its PACA duties, it breached them as a trustee of the PACA trust between Paul's Pak and Premium Fresh. Andrew Smith, who is not a beneficiary of that trust, lacks standing to recover for such a breach. *See id.* (legislative history of PACA clarifying that if there is a PACA trust between A and B and a PACA trust between B and C, A cannot recover directly from C based on C's breach of trust).

### 2. Third Party Transferee Liability

In the alternative, Andrew Smith contends that Church Defendants are liable under PACA as third party transferees who received PACA trust assets in breach of a PACA trust and with notice of that breach. As discussed above, PACA claims for disgorgement can be brought against third party transferees who received trust assets with notice of the breach of trust. *See Nickey Gregory*, 597 F.3d at 596; *see also Endico Potatoes*, 67 F.3d at 1069. According to Andrew Smith, Paul's Pak transferred trust assets to Church Defendants in breach of the PACA trust between Andrew Smith and Paul's Pak by entering into the Waiver Agreement, and Church Defendants had notice of this breach of trust.

For the same reasons discussed above, Paul's Pak's waiver of its PACA rights under the Waiver Agreement constitutes a breach of trust. Since the Waiver Agreement provides for Church Brothers to be paid from produce sales proceeds prior to Paul's Pak, the supplier, Church Defendants received trust assets as a result of this breach of trust. *See* Dkt. No. 73 Ex. 12; Dkt. No. 230 Ex. 12. As for the question of whether Church Defendants had notice of the breach of trust, it appears that

Church Defendants knew that Premium Fresh was in financial trouble, and that Premium Fresh owed money to Paul's Pak, who owed money to Andrew Smith. *See* Dkt. No. 230 ¶¶ 11-15, 22. "In the PACA context, a duty of inquiry arises when a third-party transferee has knowledge that a produce purchaser/trustee is not paying produce suppliers or is in financial difficulty." *Consumers Produce*, 16 F.3d at 1383. Accordingly, a reasonable fact-finder may find that Church Defendants had constructive knowledge of the breach of trust. Moreover, Church Defendants have the burden of establishing that they lacked notice and were bona fide purchasers of the trust assets. *See id.* Because they have failed to put forth any evidence showing lack of notice, the court finds that Church Defendants may be found liable as third party transferees with notice and therefore denies their motion for summary adjudication in their favor on Counts Four and Six.

**B.     Counts Seven, Eight, and Nine**

Church Defendants argue that summary adjudication should be granted in their favor on Counts Seven, Eight, and Nine because each of these causes of action are premised upon Church Defendants owing Andrew Smith a fiduciary duty under PACA. However, Andrew Smith could prevail on Counts Seven and Eight, for unjust enrichment and conversion, respectively, based on a finding of third party transferee liability. Count Nine, for fiduciary fraud and constructive trust, does require finding that Church Defendants owe Andrew Smith a fiduciary duty. As discussed above, there is no PACA trust between Andrew Smith and Church Defendants, and accordingly, Church Defendants are not trustees with fiduciary duties based on such a PACA trust. Although there is a PACA trust between Andrew Smith and Paul's Pak, Andrew Smith has failed to establish that Church Defendants control the daily operations of Paul's Pak. Therefore, Andrew Smith has failed to set forth any basis for finding that Church Defendants owe it a fiduciary duty. The court thus grants Church Defendants' motion for summary adjudication in their favor on Count Nine and deny their motion for summary adjudication in their favor on Counts Seven and Eight.

**C.     Count Ten – Fraudulent Concealment**

Andrew Smith's fraudulent concealment claim is based on its allegation that Church Defendants intentionally concealed the existence of the Waiver Agreement from Andrew Smith. Church Defendants argue that summary adjudication should be entered in their favor because

Andrew Smith has failed to provide evidence of proximately caused damages, a required element in a cause of action for fraudulent concealment.[4] *See Zinn*, 148 Cal. App. 2d at 68.

Church Defendants point out that Andrew Smith was already aware of the significant financial risk it was taking in supplying Paul's Pak with lettuce since it had given notice on multiple occasions to Paul's Pak that it was terminating its supply contract due to Paul's Pak's failure to make timely payments. *See* Dkt. No. 233 ¶ 14, Ex. 12. While this may suggest that Andrew Smith might have continued supplying Paul's Pak with lettuce even if it had known about the Waiver Agreement, a factual question is raised. The owner of Andrew Smith testified that Andrew Smith would have stopped supplying lettuce to Paul's Pak if it had been aware of the existence of the Waiver Agreement. *See* Dkt. No. 255 Ex. 3, 170:10-22. The court finds that there is a genuine issue of material fact as to whether Andrew Smith would have continued to supply Paul's Pak with lettuce had it known about the Waiver Agreement.

Church Defendants also contend that they had no duty to disclose the existence of the Waiver Agreement to Andrew Smith. As discussed above, when one who has no duty to speak chooses to do so, "he is bound to speak truthfully and to speak the whole truth." *Zinn*, 148 Cal. App. 2d at 68. Andrew Smith has offered evidence that Church Defendants spoke to Andrew Smith, requesting financial assistance and seeking a restructuring of existing PACA debt. *See* Dkt. No. 253 Ex. 1 ¶¶ 14-15. A reasonable fact-finder could find that these communications with Andrew Smith were likely to mislead Andrew Smith, absent disclosure of the Waiver Agreement. Accordingly, Church Defendants would have had a duty to disclose the Waiver Agreement. *See* Cal. Civ. Code § 1710 (deceit includes "[t]he suppression of a fact, by one . . . who gives information of other facts which are likely to mislead for want of communication of that fact"). The court thus denies Church Defendants' motion for summary adjudication in its favor on Count Ten.

### D. Count Eleven – Fraudulent Misrepresentation

Andrew Smith's fraudulent misrepresentation claim is based on its allegation that at some

---

[4] Church Defendants also argue in their reply papers that Andrew Smith has failed to establish reasonable reliance. Because this issue was raised for the first time in the reply, the court does not consider it.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT ON ANDREW SMITH'S CLAIMS—No. C-08-04802 RMW
CCL                                     13

time between February 2008 and October 2008, Church Defendants "fraudulently misrepresented to Plaintiff their intention of satisfying all of Plaintiff's PACA claims in an attempt to induce Plaintiff to continue supplying Paul's Pak and Premium Fresh with produce." Second Am. Compl. ¶ 126. Church Defendants contend that summary adjudication should be granted in their favor because Andrew Smith cannot even identify with specificity any affirmative misrepresentation allegedly made by Church Defendants. In response, Andrew Smith points to paragraphs in a declaration stating that Andrew Smith was never informed of the existence of the Waiver Agreement. *See* Dkt. No. 253-1 ¶¶ 14-15. These statements fail to point to any affirmative misrepresentation made by Church Defendants, much less identify the fraud with specificity. The court therefore grants Church Defendants' motion for summary adjudication in their favor on Count Eleven.

## IV.  ORDER

For the foregoing reasons, the court's ruling is as follows:

Motion to Strike:

1. The court grants True Leaf Defendants' and Church Defendants' motion to strike the original and the amended Grottveit Declarations and all attached exhibits, paragraphs 11 and 12 of the Smith Declaration, and Exhibits 3, 4, and 5 attached to the Smith Declaration.

2. The court denies True Leaf Defendants' and Church Defendants' motion to strike the original and the amended Kahn Declarations and their attached exhibits.

True Leaf Defendants' Motion for Summary Judgment:

3. The court denies True Leaf Defendants' motion for summary adjudication in their favor on Counts Four, Six, Seven, Eight, and Ten.

4. The court grants True Leaf Defendants' motion for summary adjudication in their favor on Counts Nine and Eleven.

Church Defendants' Motion for Summary Judgment:

5. The court denies Church Defendants' motion for summary adjudication in their favor on Counts Four, Six, Seven, Eight, and Ten.

6. The court grants Church Defendants' motion for summary adjudication in their favor on Counts Nine and Eleven.

DATED:  11/17/2010

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge