**E-FILED on** ___11/17/2010___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW SMITH COMPANY, a general partnership, | No. C-08-04802 RMW |
| Plaintiff, | |
| v. | |
| PAUL'S PAK, INC.; PREMIUM FRESH FARMS, LLC; PDP & ASSOCIATES, LLC; AG HARVESTING & TECHNOLOGIES, LLC; ESV INVESTMENTS, LLC; SALVADOR PAUL TARANTINO; PAUL S. TARANTINO; JOHN L. SIMMONS; EMMIT L. PFOST; JACK PARSON; STEVEN A. CINELLI; JOHN D. TAMAGNI; ROBERT ELLIOTT; JAMES S. TAMAGNI; RICHARD TAMAGNI; STEVE CHURCH; THOMAS CHURCH; DAVID GILL; CHURCH BROTHERS, LLC; and TRUE LEAF FARMS, LLC, | ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT ON PAUL'S PAK'S CLAIMS

**[Re Docket Nos. 220, 229, 232, 282]** |
| Defendants. | |

Plaintiff Andrew Smith Company ("Andrew Smith") has sued a network of defendants –

including Paul's Pak, Inc. ("Paul's Pak"), Premium Fresh Farms, LLC ("Premium Fresh"), Church

Brothers, LLC ("Church Brothers"), and True Leaf Farms, LLC ("True Leaf") – because it has not

been paid for over three million dollars worth of lettuce.  Paul's Pak has asserted counterclaims

against Andrew Smith, as well as crossclaims against Premium Fresh, Church Brothers, and True

1  Leaf.  Church Brothers has asserted counterclaims against Paul's Pak and crossclaims against

2  Salvador Tarantino.

3       Paul's Pak, Church Brothers, and True Leaf each move for summary judgment on Paul's

4  Pak's claims.  For the following reasons, the court grants the motions in part and denies the motions

5  in part.

## I.  PAUL'S PAK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

7       In its Second Amended Counterclaim, Paul's Pak asserts various causes of action, including

8  breach of contract by both Church Brothers and Premium Fresh.  Paul's Pak now moves for partial

9  summary judgment on its two breach of contract claims and on the enforceability of a Waiver

10  agreement.

### A.       Breach of Contract Claim Against Church Brothers

12       The following facts are undisputed.  On November 7, 2007, Church Brothers entered into a

13  written agreement with Paul's Pak ("Supply Agreement"), whereby Paul's Pak agreed to supply

14  Church Brothers with lettuce ("Church Produce").  *See* Dkt. No. 222 ¶ 16.  Under the terms of the

15  Supply Agreement, Church Brothers was to pay Paul's Pak for the Church Produce within Perishable

16  Agricultural Commodities Act ("PACA") terms, which is net ten days.  *See* Dkt. No. 222 ¶ 16, Ex. J.

17  Paul's Pak supplied lettuce to Church Brothers as contemplated, and Church Brothers took

18  possession and delivery of the Church Produce without objection or complaint.  *See* Dkt. No. 222 ¶¶

19  27, 28.  However, Church Brothers has failed to pay Paul's Pak a sum of $496,022.85 for the Church

20  Produce.  *See* Dkt. No. 222 ¶ 17, Ex. K.

21       To prevail on a breach of contract claim, a plaintiff must establish each of the following

22  elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

23  breach, and (4) the resulting damages to plaintiff.  *See Durell v. Sharp Healthcare*, 183 Cal. App.

24  4th 1350, 1367 (2010).  Based on the undisputed facts, Paul's Pak has established all of the elements

25  of a breach of contract claim against Church Brothers: (1) entry into a contract by Paul's Pak and

26  Church Brothers whereby Paul's Pak agreed to supply, and Church Brothers agreed to purchase,

27  lettuce; (2) performance by Paul's Pak by supplying the lettuce; (3) Church Brothers' breach of the

28  contract by failing to pay for lettuce that it took delivery of without complaint; and (4) damage to

1   Paul's Pak based on Church Brothers' failure to pay a total of $496,022.85. *See* Dkt. No. 222 ¶¶ 16,

2   17, 27, 28.

3       Church Brothers argues that Paul's Pak nonetheless cannot recover for breach of the Supply

4   Agreement because it entered into a Waiver agreement with Church Brothers. To comprehend this

5   Waiver agreement, it is necessary to understand the relationships among Paul's Pak, Premium Fresh,

6   and Church Brothers. As noted above, Paul's Pak directly supplied Church Brothers with lettuce

7   under the Supply Agreement. *See* Dkt. No. 222 ¶ 16. Paul's Pak also had agreements with Premium

8   Fresh ("Premium Contracts"), whereby Paul's Pak agreed to supply Premium Fresh with lettuce

9   ("Premium Produce"). *See* Dkt. No. 222 ¶¶ 4, 5. On November 26, 2007, Premium Fresh entered

10  into an agreement with Church Brothers ("Marketing Agreement"), whereby Church Brothers agreed

11  to market and sell Premium Fresh's packaged salads for a sales commission. *See* Dkt. No. 222 Ex.

12  H. §§ 7.1, 7.4. On February 4, 2008, Salvador Tarantino signed an agreement ("Waiver

13  Agreement"), purportedly on behalf of Paul's Pak and Premium Fresh, which provides in part:

> Church Brothers is acting on behalf of Premium Fresh Farms in the marketing and
> accounting for their products. Church Brothers agrees to provide Premium Fresh a
> base distribution of $25,000 per week beginning with the 1/05/08 production block
> payment. If the Premium Fresh and Church Brothers marketing deal terminates for
> any reason, Premium Fresh and Paul's Pak agree that all vendors except for Paul's Pak
> will be paid in full by Church Brothers from the Premium Fresh sales proceeds. Once
> all vendors (including True Leaf and Church Brothers) have been fully paid (invoices
> from November 24th invoices and on) from sales proceeds, any additional money
> remaining will be remitted to Premium Fresh who will than [sic] pay Paul's Pak.
> Church Brothers will not be responsible for any unpaid Paul's Pak raw product
> invoices. Paul's Pak will waive all PACA rights related to these unpaid invoices and
> will agree that such invoices will be collected from Premium Fresh directly.
>
> Church Brothers, Premium Fresh, and Paul's Pak will meet periodically to determine
> whether financial results merit the rescission of this agreement. Church Brothers has
> the right to modify the base distribution at its discretion.

22  Dkt. No. 4 Ex. 12.

23      Church Brothers takes the position that Paul's Pak has waived its right to recover under the

24  Supply Agreement because the Waiver Agreement states, "Church Brothers will not be responsible

25  for any unpaid Paul's Pak raw product invoices." *Id.* This sentence appears to support Church

26  Brothers' position. However, read in the context of the Waiver Agreement as a whole, the parties

27  may have only intended that Paul's Pak waive its right to recover from Church Brothers under the

1  Premium Contracts and not its rights under the Supply Agreement.  The Waiver Agreement refers to

2  the Marketing Agreement between Church Brothers and Premium Fresh, the distribution of proceeds

3  from Premium Produce, and how Paul's Pak would recover funds it is owed for Premium Produce

4  upon termination of the Marketing Agreement.  *See id.*  It never expressly refers to the Supply

5  Agreement between Paul's Pak and Church Brothers or the distribution of proceeds from Church

6  Produce.  *See id.*  Furthermore, under the Waiver Agreement, rather than holding Church Brothers

7  responsible for unpaid raw product invoices, Paul's Paks agrees "that such invoices will be collected

8  from Premium Fresh directly."  *Id.*  Since Premium Fresh is not a party to the Supply Agreement, the

9  unpaid invoices may well only refer to Premium Produce invoices submitted by Paul's Pak to

10  Premium Fresh pursuant to the Premium Contracts, not Church Produce invoices submitted by Paul's

11  Pak to Church Brothers pursuant to the Supply Agreement.  Since the Waiver Agreement is

12  reasonably susceptible to different interpretations, parol evidence is admissible and the

13  circumstances and negotiations surrounding the parties' entry  into the waiver agreement must be

14  considered.  *See PG&E v. G.W. Thomas Drayage & Rigging Co.*, 69 C.2d 33, 39 (1968).  The court

15  concludes that whether Paul's Pak's rights under the Supply Agreement are outside the scope of the

16  Waiver Agreement presents a question of fact.

17        **B.**      **Enforceability of Waiver Agreement**

18        Paul's Pak also seeks summary adjudication that the Waiver Agreement is unenforceable

19  because it lacked consideration.  In particular, Paul's Pak argues that the Waiver Agreement lacks

20  consideration because: (1) Church Brothers' promise to pay was illusory; (2) Church Brothers

21  stopped making payments after a short period of time; (3) no payments were made to Paul's Pak; and

22  (4) Church Brothers did not agree to pay Premium Fresh more than it was already lawfully obligated

23  to pay.

24        **1.**      **Illusory Promise**

25        Paul's Pak argues that Church Brothers' promise to pay a base distribution was illusory

26  because Church Brothers maintained "the right to modify the base distribution at its discretion."

27  Dkt. No. 4 Ex. 12.  Generally, when the consideration for a contract is based on promises, "if one of

28  the promises leaves a party free to perform or to withdraw from the agreement at his own

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR   SUMMARY JUDGMENT ON PAUL'S PAK'S
CLAIMS—No. C-08-04802 RMW
CCL                  4

1  unrestricted pleasure, the promise is deemed illusory and it provides no consideration." *Mattei v.*

2  *Hopper*, 51 Cal. 2d 119, 122 (1958).  However, the corollary to this rule is that "[a]n agreement that

3  is otherwise illusory may be enforced where the promisor has rendered at least part performance."

4  *Steiner v. Thexton*, 48 Cal. 4th 411, 423 (2010).  In this case, it is undisputed that Church Brothers

5  has paid hundreds of thousands of dollars to Premium Fresh pursuant to the Waiver Agreement.[1]

6  *See* Dkt. No. 222 ¶ 34, Ex. N.  Because Church Brothers has rendered at least part performance, the

7  Waiver Agreement is not unenforceable due to an illusory promise.  **2.   Early**

8  **Termination**

9  **on of**

10  **Payments**

11  Paul's Pak then contends that the Waiver Agreement lacks consideration because Church

12  Brothers was required to make base distributions of $25,000 per week until late October 2008 but

13  failed to do so, ceasing to make payments to Premium Fresh in April 2008.  In light of the contract

14  language that expressly gives Church Brothers the discretion to modify its base distributions, it is

15  difficult to see how the Waiver Agreement could be interpreted as requiring continuing weekly

16  payments of $25,000 through late October 2008.  In fact, Paul's Pak admits that "under the express

17  terms of the Putative Waiver, the base distribution could be modified to zero, at any time."  Dkt. No.

18  220 at 15.  Moreover, as discussed above, part performance is sufficient to render an agreement

19  enforceable.  *Steiner*, 48 Cal. 4th at 423.  Thus, even if Church Brothers failed to fully perform

20  under the agreement, the Waiver Agreement would not be unenforceable for lack of consideration.

21

22  **3.   Lack of Benefit to Paul's Pak**

23  Paul's Pak also claims that the Waiver Agreement lacks consideration because no payments

24  were made directly to Paul's Pak.  All payments under the Waiver Agreement were made to

25

26  [1]  A total sum of $390,000 was paid pursuant to the Waiver Agreement.  Church Brothers states in
its papers that $420,000 was paid in cash advances, but it appears that the first $30,000 was not paid

27  pursuant to the Waiver Agreement.  The Waiver Agreement provides for distributions beginning
with the January 5, 2008 production block, *see* Dkt. No. 4 Ex. 12, and the first $30,000 was paid for

28  a period prior to the January 5, 2008 production block, *see* Dkt. No. 222 Ex. N.

**United States District Court**
For the Northern District of California

1   Premium Fresh.  However, Premium Fresh had contractual obligations to pay Paul's Pak for the

2   lettuce that Paul's Pak supplied to Premium Fresh under the Premium Contracts.  *See* Dkt. No. 220 ¶

3   5.  Thus, Paul's Pak would stand to benefit if Premium Fresh were able to continue operations and to

4   improve its financial condition.  Moreover, "[i]t is elementary, in the law of contracts that the

5   consideration need not involve a benefit to the promisor but that it is enough that it be a detriment to

6   the promisee."  *Feldmeier v. Mortg. Sec., Inc.*, 34 Cal. App. 2d 201, 271 (1939).  Thus, even if Paul's

7   Pak stood to gain no benefit from the payments that Church Brothers made to Premium Fresh, this

8   would not prevent such payments from constituting valid consideration.

9               **4.    Pre-Existing Obligation**

10               Paul's Pak contends that Church Brothers' weekly distributions to Premium Fresh did not

11   constitute consideration because Church Brothers was already lawfully bound to make these

12   payments to Premium Fresh.  "Doing or promising to do what one already is legally bound to do

13   cannot be consideration for a promise."  *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 32 (2000); *see also*

14   Cal. Civ. Code § 1605 (defining good consideration as "[a]ny benefit conferred, or agreed to be

15   conferred, upon the promisor, by any other person, *to which the promisor is not lawfully entitled*, or

16   any prejudice suffered, or agreed to be suffered, by such person, *other than such as he is at the time*

17   *of consent lawfully bound to suffer*, as an inducement to the promisor") (emphasis added).

18               As mentioned previously, Premium Fresh and Church Brothers entered into the Marketing

19   Agreement, whereby Church Brothers agreed to market and sell Premium Fresh's packaged salads

20   for a sales commission.  *See* Dkt. No. 222 Ex. H. §§ 7.1, 7.4.  Under the terms of the Marketing

21   Agreement, Church Brothers was required to remit Net Sales Proceeds to Premium Fresh.  *See id.* §

22   7.1.  Net Sales Proceeds is defined in the Marketing Agreement as the gross price obtained for sale

23   of the packaged salads less certain deductible expenses, including the sales commission to be paid to

24   Church Brothers, cooling costs, shipping costs, and "any other expenses to be paid as directed by

25   Premium."  *Id.* § 7.5.1.

26               Paul's Pak argues that under the terms of the Marketing Agreement, Church Brothers lacked

27   the authority to use sales proceeds to pay True Leaf, another vender, for processing costs and should

28   have remitted those funds to Premium Fresh instead.  However, the evidence shows that Church

United States District Court
For the Northern District of California

1    Brothers used sales proceeds to pay processing costs pursuant to written authorization from Jack

2    Simmons (who was acted pursuant to the direction of a managing member of Premium Fresh). *See*

3    Dkt. No. 261 Ex. 83 ("Brown Dep.") 388:10-390:6; *see also* Dkt. No. 264 ¶¶ 4, 7.  Church Brothers

4    provided Premium Fresh with weekly information regarding sales revenue and various costs, and

5    Simmons sent Church Brothers weekly payment reports, directing Church Brothers to pay certain

6    vendors from the sales proceeds.  *See id.*  Since the Marketing Agreement defines "Deductible

7    Expenses" as including "any other expenses to be paid as directed by Premium," payments to True

8    Leaf and other vendors that had been authorized by Premium Fresh in these weekly payment reports

9    were properly deducted from sales proceeds under the express terms of the Marketing Agreement.

10   *See* Dkt. No. 222 Ex. H § 7.5.1.

11          It is undisputed that the Marketing Agreement does not entitle Premium Fresh to cash

12   advances.  Accordingly, to the extent that Church Brothers complied with the instructions in the

13   weekly payment reports, they were not lawfully obligated to remit additional funds to Premium

14   Fresh.  Under the terms of the Marketing Agreement, Premium Fresh could have required Church

15   Brothers to remit a greater portion of the gross sales proceeds to it rather than asking Church

16   Brothers to use these funds to pay other vendors.  Instead, Premium Fresh chose to authorize Church

17   Brothers to make various vendor payments using sales proceeds (thus reducing the amount of Net

18   Sales Proceeds it was entitled to receive) and then sought additional cash advances from Church

19   Brothers.

20          Paul's Pak has failed to produce evidence showing that Church Brothers had failed to remit

21   Net Sales Proceeds as required under the Marketing Agreement at the time the Waiver Agreement

22   was signed.[2]  Although Paul's Pak has pointed to limited instances where Church Brothers later

23   refused to pay vendors in accordance with Premium Fresh's instructions, *see* Dkt. No. 264 ¶ 9, Paul's

24   Pak has failed to establish that Church Brothers was already legally obligated, under the terms of the

25   Marketing Agreement, to pay Premium Fresh all of the funds that were paid pursuant to the Waiver

26

27   _____

28   [2]  It appears that Church Brothers initially refused to distribute $30,000 in Net Sales Proceeds to
     Premium Fresh but then changed its mind and remitted the funds.  *See* Dkt. No. 264 ¶ 8.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR   SUMMARY JUDGMENT ON PAUL'S PAK'S
CLAIMS—No. C-08-04802 RMW
CCL                                                      7

1  Agreement. Therefore, Paul's Pak's argument that Church Brothers' payments to Premium Fresh did

2  not constitute consideration because it was already legally obligated to make these payments fails.

3       The court thus denies Paul's Pak's motion for summary adjudication that the Waiver

4  Agreement is unenforceable for lack of consideration. Because the enforceability of the Waiver

5  Agreement remains to be determined, the court also denies Paul's Pak's request for an order stating

6  that Church Brothers owes Paul's Pak $145,477, plus attorney's fees, costs, and interest, based on the

7  Waiver Agreement.

8       **C.**    **Breach of Contract Claim Against Premium Fresh**

9       The following facts are undisputed. On April 1, 2007, Premium Fresh entered into an

10  agreement with Paul's Pak ("2007 Agreement"), whereby Paul's Pak agreed to supply Premium

11  Fresh with lettuce. *See* Dkt. No. 222 ¶¶ 4, 5, Ex. E. Under the terms of the 2007 Agreement,

12  Premium Fresh was to pay Paul's Pak for the lettuce within PACA terms, which is net ten days. *See*

13  Dkt. No. 222 Ex. E. Paul's Pak supplied lettuce to Premium Fresh as contemplated, and Premium

14  Fresh took possession and delivery of the lettuce without objection or complaint. *See* Dkt. No. 222

15  ¶¶ 21, 22. However, Premium Fresh has failed to pay Paul's Pak a sum of $1,238,289.35 for the

16  lettuce supplied by Paul's Pak. *See* Dkt. No. 222 ¶¶ 6-8, Exs. F, G.

17       Based on the undisputed facts, Paul's Pak has established all of the elements of a breach of

18  contract claim against Premium Fresh: (1) entry into a contract by Paul's Pak and Premium Fresh

19  whereby Paul's Pak agreed to supply, and Premium Fresh agreed to purchase, lettuce; (2)

20  performance by Paul's Pak by supplying the lettuce; (3) Premium Fresh's breach of the contract by

21  failing to pay for lettuce that it took delivery of without complaint; and (4) damage to Paul's Pak

22  based on Premium Fresh's failure to pay a total of $1,238,289.35. *See* Dkt. No. 222 ¶¶ 4-8, 21, 22.

23  Premium Fresh nonetheless argues that Paul's Pak's motion for summary judgment on its claim for

24  breach of the 2007 Agreement should be denied because: (1) there is no signed writing evidencing a

25  contract; (2) Paul's Pak waived its contractual rights; (3) Paul's Pak failed to mitigate damages; and

26  (4) Paul's Pak's claim is barred by the doctrine of unclean hands.

27       **1.**    **No Signed Writing**

28

United States District Court
For the Northern District of California

1    As evidence of the fact that Paul's Pak and Premium Fresh entered into the 2007 Agreement,

2    Paul's Pak has submitted the declaration of Salvador Tarantino, who is both president of Paul's Pak

3    and an indirect owner and manager of Premium Fresh, and an exhibit containing an unsigned writing

4    setting forth the terms of the agreement.  *See* Dkt. No. 222 ¶¶ 4-5, 20, Ex. E.  Premium Fresh

5    contends that Paul's Pak has failed to establish the existence of a contract because the writing

6    containing the detailed terms of the agreement is unsigned.  However, a signed writing is not

7    required to form a binding contract.  Although the Statute of Frauds generally requires a signed

8    writing to enforce a contract for the sale of goods for the price of $500 or more, a contract may

9    nonetheless be enforced, even without a signed writing, with respect to goods which have been

10   received and accepted.  *See* Cal. U. Com. Code § 2201(3)(c).  In his declaration, Salvador Tarantino

11   testifies that: (1) Premium Fresh and Paul's Pak had an agreement with the terms set forth in the

12   writing attached as Exhibit E; (2) Paul's Pak supplied lettuce to Premium Fresh as contemplated

13   under the agreement; and (3) Premium Fresh took possession and delivery of the lettuce without

14   objection or complaint.  *See* Dkt. No. 222 ¶¶ 4-5, 20-22, Ex. E.  Since Paul's Pak seeks damages for

15   lettuce that was received and accepted by Premium Fresh, it may enforce the 2007 Agreement to

16   recover these damages despite the lack of a signed writing.  *See* Cal. U. Com. Code § 2201(3)(c).

17                 **2.     Waiver of Rights**

18           Premium Fresh argues that Paul's Pak waived its right to recover for breach of the 2007

19   Agreement by signing the Waiver Agreement and by signing a separate subordination agreement.

20   Under the express terms of the Waiver Agreement, however, Paul's Pak agrees not to hold Church

21   Brothers responsible for unpaid raw product invoices and agrees that "such invoices will be

22   collected from Premium Fresh directly."  Dkt. No. 4 Ex. 12.  This language does not suggest that

23   Paul's Pak waived its right to collect money owed under the 2007 Agreement from Premium Fresh.

24           The court declines to consider the alleged subordination agreement, attached as Exhibit A to

25   the Declaration of John D. Tamagni, because Premium Fresh failed to produce this document to

26   Paul's Pak, either as part of its required initial disclosures under Federal Rule of Civil Procedure

27   26(a) or in response to discovery requests.  *See* Dkt. No. 272 ¶ 3.

28

United States District Court
For the Northern District of California

> If a party fails to produce information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  Premium Fresh has not offered any justification for its failure to produce the alleged subordination agreement, and this failure is not harmless in light of the fact that the document was produced only after Paul's Pak had already filed its motion for summary judgment and deposed both of Premium Fresh's principals, Bob Elliott and John Tamagni.  *See* Dkt. No. 272 ¶¶ 3-4.  Therefore, Premium Fresh is precluded from relying upon the subordination agreement in opposing Paul's Pak's motion for summary judgment.

### 3.       Failure to Mitigate Damages

Premium Fresh asserts that Paul's Pak is precluded from seeking damages for breach of contract because it has failed to mitigate damages.  However, failure to mitigate damages has not been raised as an affirmative defense in Premium Fresh's pleadings.[3]  "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."  *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).  Since failure to mitigate damages is not at issue in the pleadings, the court declines to consider this affirmative defense.

### 4.       Unclean Hands

Premium Fresh also contends that Paul's Pak is precluded from seeking damages for breach of contract under the doctrine of unclean hands.  The only evidence Premium Fresh sets forth to support its claim of unclean hands is a letter from Jack Simmons (who acted as controller of Premium Fresh and general manager of Paul's Pak), dated June 16, 2005, in which he admits to giving Premium Fresh preferential treatment and putting Paul's Pak "in the unenviable position of holding the bag."  *See* Dkt. No. 252 Ex. B.  The court finds Premium Fresh's argument that preferential treatment of Premium Fresh to the detriment of Paul's Pak in 2005 precludes Paul's Pak from seeking damages for breach of the 2007 Agreement unpersuasive.

---

[3]  In fact, Premium Fresh has not filed an answer to Paul's Pak's Second Amended Counterclaim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.      Damages

Since Paul's Pak has established each of the elements for breach of contract with undisputed facts, and Premium Fresh has failed to establish a basis for denying summary judgment on this issue, the court grants Paul's Pak's motion for summary judgment on its claim for breach of the 2007 Agreement.

In addition to the $1,238,289.35 owed under the 2007 Agreement, Paul's Pak seeks an award of attorney's fees, costs, and interest.  The 2007 Agreement provides that "[e]ach party shall bear its own costs and attorneys fees."  Dkt. No. 222 Ex. E.  The court thus declines to award attorney's fees and costs.  An award of prejudgment interest, however, is appropriate because both the amount of money owed and the time at which the money became due is clear from the 2007 Agreement.  *See id.*; *see also* Cal. Civ. Code § 3287 (providing that a prevailing party in a breach of contract action is entitled to recover interest when the amount of damages is certain and the right to recover is vested upon a particular day).  Since the 2007 Agreement does not set forth an interest rate, the default interest rate of ten percent per annum set forth in California Civil Code § 3289(b) is applicable.  The court therefore awards Paul's Pak damages, including prejudgment interest, in the amount of $1,620,046.86 as of August 19, 2010 with interest accruing thereafter at the rate of $339.26 per day.  *See* Dkt. No. 221 ¶¶ 5, 6, Ex. B.

## II.  CHURCH BROTHERS' MOTION FOR SUMMARY JUDGMENT

In its Second Amended Counterclaim, Paul's Pak asserts the following causes of action against Church Brothers:

- • Count Two – breach of contract;
- • Count Three – PACA claim for disgorgement of trust assets (regarding Premium Produce);
- • Count Four – PACA claim for disgorgement of trust assets (regarding Church Produce);
- • Count Five – PACA claim for failure to pay (regarding Premium Produce);
- • Count Six – PACA claim for failure to pay (regarding Church Produce);
- • Count Seven – injunctive relief;

• Count Eight – unjust enrichment (regarding Premium Produce);

• Count Nine – unjust enrichment (regarding Church Produce);

• Count Ten – conversion (regarding Premium Produce);

• Count Eleven – conversion (regarding Church Produce);

• Count Twelve – fiduciary fraud and constructive trust;

• Count Thirteen – intentional interference with contract;

• Count Fourteen – breach of third party beneficiary contract;

• Count Fifteen – violation of the California Food and Agricultural Code; and

• Count Sixteen – indemnification.

**A.   Waiver Agreement**

Church Brothers seeks summary adjudication in its favor on Counts Two through Twelve based on the Waiver Agreement.  According to Church Brothers, Paul's Pak waived its right to assert both contractual and PACA-based claims under the Waiver Agreement.  As discussed above, the Supply Agreement between Paul's Pak and Church Brothers, dealing with Church Produce, may be outside the scope of the Waiver Agreement.  Thus, the court denies Church Brothers' motion for summary adjudication on Counts Two, Four, Six, Seven, Nine, Eleven, and Twelve, as these causes of action are based partially or solely on Church Produce.

The court also denies Church Brothers' motion for summary adjudication on the remaining causes of action – Counts Three, Five, Eight, and Ten – because Church Brothers has failed to provide evidence establishing the required elements of an effective waiver.

> Waiver of a right conferred by law must be voluntary, knowing and done with adequate awareness of the relevant circumstances and likely consequences.  A waiver is not effective unless the party executing it is fully informed of: (1) the existence of the right being waived; (2) the meaning of the waiver; (3) the effect of the waiver; and (4) a full understanding of the explanation of the waiver.  The burden is on the party claiming a waiver to prove it by clear and convincing evidence. Doubtful cases will be decided against the existence of waiver, especially when the right alleged to be waived is one that is favored by law.

*Silva v. Wells Fargo Bank, N.A.*, 202 B.R. 140, at *11-12 (N.D. Cal. 1996) (internal citations omitted).  As the party claiming the waiver, Church Brothers bears of the burden of proving by clear and convincing evidence that the Waiver Agreement was an effective waiver of Paul's Pak's PACA

United States District Court
For the Northern District of California

rights.  *See id.* at *12.  Even though Paul's Pak pointed out Church Brothers' failure to establish the four elements required for an effective waiver in its opposition, Church Brothers made no attempt to address this deficiency in its reply.  Accordingly, whether the Waiver Agreement was an effective waiver of Paul's Pak's PACA rights remains a genuine issue of material fact.

**B.      Recovery for Premium Produce**

Church Brothers moves for summary adjudication in its favor on Counts Three, Five, Eight, and Ten, which seek recovery for Premium Produce, because the damages sought are based on invoices predating the Marketing Agreement.  Paul's Pak seeks to recover for Premium Produce sold to Premium Fresh between April 28, 2007 and November 12, 2007 based on the theory that Church Brothers exerted officer-like control over Premium Fresh.  The facts are undisputed that Church Brothers did not exert officer-like control over Premium Fresh prior to the Marketing Agreement, which Church Brothers and Premium Fresh entered into on November 26, 2007.  *See* Dkt. No. 222 Ex. H.  The question before the court is whether Paul's Pak must show that Church Brothers controlled Premium Fresh at the time the produce was sold to Premium Fresh in order to assert a PACA claim against Church Brothers based on said produce.

Under PACA, a produce dealer holds its produce-related assets in trust for the produce seller until full payment has been made to the produce seller.  *See* 7 U.S.C. § 499e(c).  Paul's Pak contends that it still has not received full payment for Premium Produce provided between April 28, 2007 and November 12, 2007.  Therefore, under PACA, Premium Fresh and those who control it have a continuing duty to preserve trust assets for Paul's Pak.  Accordingly, the fact that Church Brothers is not alleged to have gained control over Premium Fresh until November 26, 2007 does not, by itself, insulate it from PACA liability for failure to preserve trust assets based on produce that was supplied to Premium Fresh prior to November 26, 2007.[4]  The court thus denies Church Brothers' motion for summary adjudication on Counts Three, Five, Eight, and Ten.      **C.      Count Thirteen –**

---

[4]  The court is not suggesting that Church Brothers would be liable for failure to preserve trust assets based on actions Premium Fresh took in breach of the PACA trust *prior to* November 26, 2007. However, Church Brothers could be found liable for failure to preserve trust assets (for produce supplied prior to November 26, 2007) based on actions taken in breach of the PACA trust *after* November 26, 2007.

1

**Interference with**

2

**Contract**

3          Church Brothers seeks dismissal of Count Thirteen, Paul's Pak's interference with contract

4    claim, for lack of standing.  Paul's Pak's interference with contract claim is based on the allegation

5    that Church Brothers caused Paul's Pak to act in a way that disrupted Paul's Pak's contractual

6    relationship with Andrew Smith.  *See* Dkt. No. 141 ¶¶ 112, 113.  As the court noted in its March 8,

7    2010 order, under these circumstances, Andrew Smith may be able to bring a claim against Church

8    Brothers for interfering with its contractual relations with Paul's Pak, but Paul's Pak lacks standing to

9    seek recovery for interference with contractual relations.

10          The elements of intentional interference with contractual relations are often listed as follows:

11   "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract;

12   (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

13   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

14   damage." *Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998) (quoting

15   *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).  However, as a

16   matter of common sense, the intentional act in element three must be designed to induce a breach or

17   disruption of the contractual relationship *by the third party*, and likewise, the breach or disruption in

18   element four must be an actual breach of disruption of the contractual relationship *by the third party*.

19   *See id.* at 56 n.15 ("One who intentionally and improperly interferes with the performance of a

20   contract . . . between another and a third person by inducing or otherwise *causing the third person*

21   *not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the

22   other from *the failure of the third person to perform the contract*.") (emphasis added) (quoting Rest.

23   2d Torts § 766).  Paul's Pak has not pointed to any cases in which the plaintiff himself was induced

24   to breach a contract with a third party, did so, and then successfully recovered damages from the

25   inducing party for intentional interference with contractual relations.  The court therefore grants

26   Church Brothers' motion for summary adjudication in its favor on Count Thirteen.

27          **D.        Count Fourteen – Third Party Beneficiary Claim**

28

**United States District Court**
For the Northern District of California

1    In Count Fourteen, Paul's Pak seeks to recover for breach of the Marketing Agreement as a

2    third party beneficiary.  Church Brothers argues that Paul's Pak is not a third party beneficiary of the

3    Marketing Agreement and thus cannot recover for breach of the Marketing Agreement.  The court

4    agrees.

5    A third party who is only incidentally benefited by a contract does not have standing to

6    enforce the contract.  *See Shurpin v. Elmhirst*, 148 Cal. App. 3d 94, 103 (1983) ("enforcement of

7    contracts by those who are only incidentally benefited is prohibited").  In order to have standing as a

8    third party beneficiary, the contract must be expressly entered into for the intended benefit of the

9    third party.  *See id.*; *see also* Cal. Civ. Code § 1559 (permitting a third person to enforce a contract if

10   it was "made expressly for the benefit of a third person").  Moreover, the contracting parties' intent

11   to confer a benefit on the third party "must appear in the terms of the agreement."  *Brinton v.*

12   *Bankers Pension Services, Inc.*, 76 Cal. App. 4th 550, 558 (1999).

13   The Marketing Agreement is a contract between Premium Fresh and Church Brothers.  *See*

14   Dkt. No. 222 Ex. H.  The terms of the Marketing Agreement do not suggest that Premium Fresh and

15   Church Brothers entered into this contract for the purpose of benefitting Paul's Pak.  By helping

16   Premium Fresh make money on the sale of its packaged salads, the Marketing Agreement may have

17   incidentally benefited Paul's Pak since Premium Fresh had a separate contractual obligation to pay

18   Paul's Pak for supplying it with lettuce.  But the court cannot discern where in the Marketing

19   Agreement that either Premium Fresh or Church Brothers expressed an intent to enter into the

20   Marketing Agreement for Paul's Pak's benefit.  Accordingly, the court finds that Paul's Pak is not an

21   intended third party beneficiary of the Marketing Agreement and thus grants Church Brothers'

22   motion for summary adjudication in its favor on Count Fourteen.

23   **E.      Count Fifteen – Violation of California Food & Agricultural Code**

24   In Count Fifteen, Paul's Pak seeks to recover for various alleged violations of the California

25   Food and Agricultural Code by Church Brothers based on its status as a third party beneficiary to the

26   Marketing Agreement.  As discussed above, Paul's Pak is not an intended third party beneficiary of

27   the Marketing Agreement.  The court therefore grants Church Brothers' motion for summary

28   adjudication in its favor on Count Fifteen.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR   SUMMARY JUDGMENT ON PAUL'S PAK'S
CLAIMS—No. C-08-04802 RMW
CCL

United States District Court
For the Northern District of California

1

**F.**     **Count Sixteen – Indemnification**

2       According to Church Brothers, the court should dismiss Count Sixteen, Paul's Pak's claim for

3   indemnification, because Counts Two through Fifteen are without merit.  As set forth above, the

4   court has denied Church Brothers' motion for summary adjudication in its favor on Counts Two

5   through Twelve.  Accordingly, the court denies Church Brothers' motion for summary adjudication

6   in its favor on Count Sixteen as well.

7              **III.  TRUE LEAF'S MOTION FOR SUMMARY JUDGMENT**

8       It is undisputed that True Leaf entered into an agreement with Premium Fresh, whereby True

9   Leaf provided facilities and labor for processing and packaging salads for Premium Fresh.  In its

10   Second Amended Counterclaim, Paul's Pak asserts the following causes of action against True Leaf:

11       •     Count Three – PACA claim for disgorgement of trust assets (regarding Premium

12             Produce);

13       •     Count Four – PACA claim for disgorgement of trust assets (regarding Church

14             Produce);

15       •     Count Five – PACA claim for failure to pay (regarding Premium Produce);

16       •     Count Six – PACA claim for failure to pay (regarding Church Produce);

17       •     Count Seven – injunctive relief

18       •     Count Eight – unjust enrichment (regarding Premium Produce);

19       •     Count Nine –  unjust enrichment (regarding Church Produce);

20       •     Count Ten – conversion (regarding Premium Produce);

21       •     Count Eleven – conversion (regarding Church Produce);

22       •     Count Twelve – fiduciary fraud and constructive trust;

23       •     Count Thirteen – intentional interference with contract; and

24       •     Count Sixteen – indemnification.

25   **A.**     **PACA Claims**

26       True Leaf seeks summary adjudication in its favor on Counts Three through Seven, Paul's

27   Pak's PACA claims.  Counts Three and Five are based on Premium Produce, while Counts Four and

28

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR   SUMMARY JUDGMENT ON PAUL'S PAK'S
CLAIMS—No. C-08-04802 RMW
CCL                                                        16

Six are based on Church Produce.  Because these causes of action arise out of different transactions with different parties, the court considers them separately.

### 1.   Premium Produce Claims

Paul's Pak bases its Premium Produce claims on its contention that True Leaf exerted officer-like control over Premium Fresh.  However, Paul's Pak has failed to provide sufficient evidence to raise a question of fact that True Leaf exerted officer-like control over Premium Fresh.  As an initial matter, the court notes that it is not the job of the district court to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Rather than identifying specific relevant evidence showing how True Leaf exerted officer-like control over Premium Fresh, Paul's Pak sets forth a long, rambling, and detailed narrative on the history of interactions among Andrew Smith, Premium Fresh, True Leaf, and Church Brothers in its opposition to True Leaf's motion for summary judgment.  *See* Dkt. No. 257 at 2-25.  Paul's Pak appears to take the position that True Leaf exerted officer-like control over Premium Fresh by: (1) entering into a processing agreement with Premium Fresh; (2) threatening to cease processing if Premium Fresh did not pay the charges it demanded; and (3) colluding with Andrew Smith and Church Brothers to pressure Premium Fresh into giving them an ownership interest in Premium Fresh.  These facts are insufficient to establish that True Leaf exerted officer-like control over Premium Fresh.

True Leaf has provided evidence showing that Premium Fresh was managed by its own managing members, including Emmitt Pfost, Robert Elliott, and John Tamagni, not by True Leaf. *See* Dkt. No. 226 ¶¶ 2, 11-14; Dkt. No. 235 ¶¶ 2, 8-11.  In fact, in its answer to Andrew Smith's amended complaint, Paul's Pak admits that Pfost, Elliot, and Tamagni were responsible for the daily management and control of True Leaf and specifically denies that True Leaf is responsible for the daily management and control of Premium Fresh.  *See* Dkt. No. 4 ¶ 26; Dkt. No. 20 ¶ 26.  In light of these undisputed facts, the court finds that there is no genuine issue of material fact regarding whether True Leaf exerted officer-like control over Premium Fresh and that True Leaf is entitled to judgment as a matter of law in its favor on Counts Three and Five.

### 2.   Church Produce Claims

1    With respect to its Church Produce claims, Paul's Pak's theory appears to be that True Leaf is

2    liable for Church Brothers' breach of its fiduciary duty to preserve trust assets because True Leaf

3    exerted officer-like control over Paul's Pak.  However, Paul's Pak has failed to provide sufficient

4    evidence that would allow a reasonable jury to find that True Leaf exerted officer-like control over

5    Paul's Pak.  Moreover, even if True Leaf had exercised control over Paul's Pak, the court fails to

6    comprehend how this would establish liability for *Church Brothers'* failure to preserve trust assets.

7    Paul's Pak does not allege that True Leaf exerted officer-like control over Church Brothers, the

8    entity that allegedly failed to preserve trust assets.  The court therefore grants True Leaf's motion for

9    summary adjudication in its favor on Counts Four, Six, and Seven.

10    **B.    Common Law Claims**

11    Counts Eight through Twelve are common law claims that are derivative of Paul's Pak's

12    PACA claims.  Accordingly, the court grants True Leaf's motion for summary adjudication in its

13    favor on Counts Eight through Twelve.

14    True Leaf also moves for dismissal of Count Thirteen, Paul's Pak's intentional interference

15    with contract claim.  This claim is based on the allegation that True Leaf caused Paul's Pak to act in

16    a way that disrupted Paul's Pak's contractual relationship with Andrew Smith.  *See* Dkt. No. 141 ¶¶

17    112, 113.  For the same reasons explained above regarding the interference with contract claim

18    asserted against Church Brothers, the court finds that Paul's Pak lacks standing to bring an

19    interference with contract claim against True Leaf.  The court therefore grants True Leaf's motion

20    for summary adjudication in its favor on Count Thirteen.

21    Count Sixteen is a claim for indemnification based on Paul's Pak's other claims against True

22    Leaf.  Paul's Pak has not opposed dismissal of this claim with any evidence, caselaw, or argument.

23    Because the court has found in favor of True Leaf on all of Paul's Pak's PACA and common law

24    claims against True Leaf, the court also grants True Leaf's motion for summary adjudication in its

25    favor on Count Sixteen.

26    **IV.  MOTION TO STRIKE**

27    **A.    Anastassiou Declaration**

28

**United States District Court**
For the Northern District of California

1    Paul's Pak's counsel, Effie F. Anastassiou, filed a declaration in support of Paul's Pak's

2    opposition to Church Brothers' and True Leaf's motions for summary judgment ("Anastassiou

3    Declaration").  *See* Dkt. No. 260.  The Anastassiou Declaration contains testimony regarding matters

4    to which Anastassiou lacks personal knowledge, and attached to the declaration are numerous

5    unauthenticated exhibits.[5]  *See id.*  Church Brothers and True Leaf move to strike paragraphs 3 to

6    100 of the declaration for lack of personal knowledge and Exhibits 1 through 82, 84 through 94, and

7    96 through 98 as unauthenticated.

8    Federal Rule of Civil Procedure 56(c)(4) requires declarations opposing a motion to "be

9    made on personal knowledge, set out facts that would be admissible in evidence, and show that the

10    affiant or declarant is competent to testify on the matters stated."  The court thus grants the motion

11    to strike paragraphs 3 to 100 in both the original and the amended Anastassiou Declarations for lack

12    of personal knowledge.  Since "unauthenticated documents cannot be considered in a motion for

13    summary judgment," *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002), the court also grants the

14    motion to strike Exhibits 1 through 82, 84 through 94, and 96 through 98 attached to the original and

15    the amended Anastassiou Declarations as unauthenticated and thus inadmissible evidence.

16    **B.    Salvador Tarantino's Deposition Testimony**

17    In addition, Church Brothers and True Leaf move to strike portions of Salvador Tarantino's

18    deposition testimony under the "sham affidavit" rule.  Under the "sham affidavit" rule, "a party

19    cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Van*

20    *Asdale v. Int'l Game Tech.*, 577 F,3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins.*

21    *Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  The Ninth Circuit has warned that this rule should be

22    applied with caution and has fashioned two limitations on its application: (1) it only applies when

23    the court has found that the contradiction was actually a sham, and (2) the inconsistency must be

24    clear and unambiguous.  *See id.* at 998-999.

25

26

27

28

---

[5] The amended declarations submitted by Paul's Pak do not fix these problems.  *See* Dkt. Nos. 283, 284, 285.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR  SUMMARY JUDGMENT ON PAUL'S PAK'S
CLAIMS—No. C-08-04802 RMW
CCL

United States District Court
For the Northern District of California

1  According to Church Brothers and True Leaf, during his deposition on July 15, 2010,

2  Salvador Tarantino contradicted his own earlier deposition testimony on June 4, 2010.  The court

3  finds that the alleged inconsistencies are not sufficiently clear to find that the later testimony was

4  actually a sham.  The court thus denies Church Brothers and True Leaf's motion to strike portions of

5  Salvador Tarantino's deposition under the "sham affidavit" rule.

6  Church Brothers and True Leaf also move to strike portions of Salvador Tarantino's

7  deposition regarding the Waiver Agreement based on the parol evidence rule.  Under California's

8  parol evidence rule, extrinsic evidence may be inadmissible when a written contract was intended to

9  be the complete and final expression of the parties' agreement.  *See Brinderson-Newberg Joint*

10  *Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 276-77 (9th Cir. 1992).  Church Brothers and True

11  Leaf have not shown that the Waiver Agreement signed by Salvador Tarantino was intended to be

12  the complete and final expression of the parties' agreement.  Hence, the court denies their motion to

13  strike portions of Salvador Tarantino's deposition based on the parol evidence rule.

## V.  ORDER

15  For the foregoing reasons, the court's ruling is as follows:

16  Paul's Pak's Motion for Partial Summary Judgment:

17  1.   The court denies Paul's Pak's motion for judgment as a matter of law in its favor on

18  its claim for breach of the Supply Agreement by Church Brothers and denies Paul's

19  Pak's motion for summary adjudication that the Waiver Agreement is unenforceable

20  due to lack of consideration.  The court also denies Paul's Pak's alternative request for

21  an order stating that Church Brothers owes Paul's Pak $145,477, plus attorney's fees,

22  costs, and interest.

23  2.   Paul's Pak is entitled to judgment as a matter of law in its favor on its claim for

24  breach of the 2007 Agreement by Premium Fresh.  The court denies the motion for

25  attorney's fees and costs but awards prejudgment interest.  The total damage award on

26  Paul's Pak's breach of contract claim against Premium Fresh is $1,620,046.86 as of

27  August 19, 2010 with interest accruing thereafter at the rate of $339.26 per day.

28  Church Brothers' Motion for Summary Judgment:

3.    The court denies Church Brothers' motion for summary adjudication in its favor on Counts Two through Twelve and Count Sixteen.

4.    The court grants Church Brothers' motion for summary adjudication in its favor on Counts Thirteen, Fourteen, and Fifteen.

True Leaf's Motion for Summary Judgment:

5.    The court grants True Leaf's motion for summary adjudication in its favor on Counts Three through Thirteen and Count Sixteen.

Motion to Strike:

6.    The court grants Church Brothers and True Leaf's motion to strike paragraphs 3 to 100 in the original and in the amended Anastassiou Declarations as well as attached Exhibits 1 through 82, 84 through 94, and 96 through 98.

7.    The court denies Church Brothers and True Leaf's motion to strike portions of Salvador Tarantino's deposition testimony.

DATED:    11/17/2010

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR   SUMMARY JUDGMENT ON PAUL'S PAK'S CLAIMS—No. C-08-04802 RMW
CCL                                                                21